Roy L. BYRD et ux., Appellants,

v.

The TRAVELERS INSURANCE COMPANY
and Daniel Lee Byrd, a Minor,
Appellees.

No. 12786.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 9, 1955.

Rehearing Denied March 9, 1955.

Tisinger & Sloan, Austin, Howard Hartzog, Port Lavaca, for appellants.

Tom Long, Austin, Tom Gambrell, Lockhart, Leon Levy, Port Lavaca, S. J. Aronson, Austin, for appellee.

W. O. MURRAY, Chief Justice.

This is a workman's compensation case. The deceased is Sammy Lee Byrd, the in-

surance carrier is The Travelers Insurance Company, the employer is Victoria County Electric Cooperative Company, and there are two sets of claimants, Roy L. Byrd and his wife, Mrs. Roy L. Byrd, parents of the deceased, and Daniel Lee Byrd, an alleged minor son of deceased. The insurance carrier tendered the full amount of compensation, amounting to $7,878.63, into court, and the only controversy in the case is as to whether the court should order this sum paid to deceased's parents or to deceased's alleged minor son, Daniel Lee Byrd.

The trial began to a jury, but when the parents had concluded their evidence, the court discharged the jury and ordered the money paid to the alleged minor son, Daniel Lee Byrd. Roy L. Byrd and his wife, Mrs. Roy L. Byrd, parents of the deceased, have prosecuted this appeal.

The correctness of the trial court's judgment depends upon whether appellants failed to make a prima facie case showing that Daniel Lee Byrd was not the legitimate son of Sammy Lee Byrd, deceased, and his former wife, Dorothy Bingham Byrd.

According to the theory of appellants, Sammy Lee Byrd and Dorothy Bingham first met on a "blind" date on February 17, 1950, when they were introduced to each other, for the first time, by H. S. Key and Dolores Thurman, who also went along on the "blind" date. H. S. Key and Dolores Thurman were afterwards married and are now known as Mr. and Mrs. H. S. Key.

The following facts are undisputed: On April 1, 1950, Sammy Lee Byrd and Dorothy Bingham were married. Six months later, on October 1, 1950, Dorothy Bingham Byrd gave birth to a baby boy named Daniel Lee Byrd. Immediately upon the happening of this event, Sammy Lee Byrd abandoned both Dorothy Bingham Byrd and the child, and never thereafter lived with Dorothy as his wife. On April 30, 1952, Dorothy Bingham Byrd filed a petition for divorce in the District Court of Caldwell County, Texas, alleging, among other things, that: "There was one child born to Plaintiff and

Defendant during their marriage, to-wit, Daniel Lee Byrd, a boy, two years of age." Sammy Lee Byrd was furnished a copy of this divorce petition, and on April 30, 1952, duly executed his sworn waiver, accepting service and entering his appearance in the cause.

On June 9, 1952, judgment was rendered granting Dorothy Bingham Byrd a divorce, and finding that "there was one child born to Plaintiff and Defendant during their marriage, to-wit, Daniel Lee Byrd, a boy, two years of age." Approximately a year later, on July 29, 1953, Sammy Lee Byrd was killed in an industrial accident, leaving no other possible claimants of his compensation other than his father and mother and his alleged son, Daniel Lee Byrd.

The trial court excluded certain testimony relating to the "blind" date, and we will first discuss the admissibility of this excluded testimony. The testimony that was excluded may be generally described as statements and admissions of Sammy Lee Byrd which related to the legitimacy of his alleged son, Daniel Lee Byrd. Appellants undertook to prove by Mrs. Roy L. Byrd, that "on the 19th day of February, 1950, in the early evening, Sammy Byrd and H. S. Key were present in her home, together with other members of her family, and were preparing to leave, when Sammy Lee Byrd, in her presence, then and there, stated his intention to immediately thereafter go on a 'blind' date with Dorothy Bingham."

 It is undisputed that the child, Daniel Lee Byrd, was born during wedlock but was antenuptially conceived. Under such circumstances the child is presumed to be the legitimate child of the wife's husband, and neither the wife nor the husband will be heard to testify to facts, nor can their statements or admissions be proven, if they tend to bastardize the child born during lawful wedlock. Gonzalez v. Gonzalez, Tex.Civ.App., 177 S.W.2d 328; Foote v. State, 65 Tex.Cr.R. 368, 144 S.W. 275; Hicks v. State, 97 Tex.Cr.R. 629, 263 S.W. 291; Moore v. Moore, Tex.Civ.

App., 299 S.W. 653; Pinkard v. Pinkard, Tex.Civ.App., 252 S.W. 265.

Appellants also complain because the remarks of H. S. Key were excluded. The entire conversation was offered by appellants and it would have been impossible to have admitted the remarks of H. S. Key without letting in the entire conversation. Furthermore, the remarks of H. S. Key would have been meaningless if offered separately. All that Key was shown to have said was, "No." The court properly excluded this testimony.

■ With this testimony properly excluded, the trial court did not err in granting appellees' motion to discharge the jury and render judgment in appellees' favor. Mr. and Mrs. H. S. Key fixed the time of the "blind" date as being either in January or February, 1950. This testimony did not even tend to prove that Sammy Byrd did not have access to Dorothy Bingham at the time the child, Daniel Lee Byrd, was evidently conceived. The only other testimony admitted, which would tend to fix the time of the "blind" date as taking place after February 15, 1950, was that of James Jones, "a constant and intimate associate of Sammy Byrd during the period from January 1, 1950, to April 1, 1950," to the effect that the first time he ever heard the name Dorothy Bingham was on February 24, 1950, when he returned from his own honeymoon, and the further testimony of another intimate and constant associate of Sammy Byrd, who testified that he never heard the name Dorothy Bingham prior to February 15, 1950. This testimony is insufficient to overcome the strong presumption that a child born during wedlock, though begotten before marriage, is the child of its mother's husband.

■■ The highest consideration of public policy supplies every reasonable presumption in favor of legitimacy. This presumption of legitimacy is one of the strongest known to the law and is not weakened or destroyed by antenuptial conception. Pinkard v. Pinkard, Tex.Civ.App., 252 S.W. 265; McCullough v. McCullough, 69

Tex. 682, 7 S.W. 593; Marckley v. Marckley, Tex.Civ.App., 189 S.W.2d 8.

■ There is another reason why the trial court properly discharged the jury and rendered judgment in favor of appellee. A divorce was granted to Dorothy Bingham Byrd on June 9, 1952, when the child, Daniel, was two years old. In this judgment of divorce a finding was made that one child was born of the marriage, Daniel Lee Byrd. Sammy Byrd was then living and was a party to the suit. He elected to make no issue of this matter, or at least he did not. Art. 4639a, Vernon's Ann. Civ.St., makes it the duty of the court, in effect, to determine the names, age and sex of all children born of the marriage and provide for their care, custody and support. This finding of the district court was binding upon Sammy Lee Byrd and his privies. It is true that the judgment awarded the custody of the child to its mother and did not require the father to support the child. However, the judgment decreed that the child, Daniel Lee Byrd, was born of the marriage of Sammy and Dorothy Byrd, and this is equivalent to a finding that Sammy Lee Byrd was the father of Daniel Lee Byrd, and it is res judicata of the matter, insofar as Sammy Lee Byrd is concerned. Under a showing of changed conditions, Sammy Lee Byrd could have been required to support the child, and he could not, on such a further hearing, have raised for the first time the contention that he was not the father of the child. Goodman v. Goodman, Tex.Civ.App., 236 S.W.2d 641. If the father of the child, when living and when it was his duty to do so if he ever intended to, did not attempt to have Daniel Lee Byrd declared a bastard, then, after his death, his mother and father cannot have the child declared a bastard to prevent the child from collecting an award which was due him under the provisions of the Workmen's Compensation Act, if he was a legitimate son of Sammy Lee Byrd. Art. 8306 et seq., Vernon's Ann.Civ.Stats.

■ If the father renounces the right to bastardize his alleged son, either expressly

or tacitly, it is extinguished and can never thereafter be exercised by anyone. 7 Am. Jur. p. 638, § 17, Note 18; In re Barth, 178 La. 847, 152 So. 543, 91 A.L.R. 408; 1 A.L.R. 1633.

Appellants further contend that the trial court erred in overruling their motion for a continuance, but such contention is without merit and is overruled. The judgment is affirmed.